104 F.3d 361
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Carol A. DAVIS, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,
Defendant-Appellee.
 No. 95-2235.
 United States Court of Appeals, Sixth Circuit.
 Dec. 19, 1996.
 
 Before: MARTIN, Chief Judge; WELLFORD and MOORE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Carol A. Davis appeals the district court's order granting summary judgment to the Commissioner of Social Security and seeks judicial review of the Commissioner's denial of her applications for widow's insurance benefits and supplemental security income.
 
 I.
 
 2
 On July 27, 1992, Carol A. Davis applied for widow's insurance benefits and supplemental security income under the Social Security Act, alleging that a hearing impairment for which she wore hearing aids caused her to become disabled on November 26, 1989. This initial claim, as well as her subsequent request for reconsideration, was denied by the Social Security Administration. Davis then filed a request for a hearing before an administrative law judge on June 7, 1993. Before a hearing was held, Davis began to suffer emotional difficulties due to the death of her great-niece. The ALJ vacated the Administration's reconsideration determination and remanded for an evaluation of Davis' mental disorder. After an evaluation was made, her claim was again denied. Davis once more requested a hearing, and on August 11, 1994, she appeared and testified before the ALJ. In a written decision dated August 25, the ALJ denied Davis' benefit applications. The ALJ based this denial on his determination that Davis had failed to demonstrate a severe impairment or impairments, and thus was not disabled. On February 17, 1995, the Appeals Council denied Davis' request for review, adopting the ALJ's findings as the final decision of the Social Security Administration.
 
 
 3
 On March 30, 1995, Davis filed a timely complaint seeking judicial review of the Administration's final decision. On August 21, the magistrate judge issued a report and recommendation suggesting that the Social Security Commissioner's motion for summary judgment be granted. The district court issued an order accepting the magistrate's report and recommendation and granting the Commissioner's motion for summary judgment on October 10. Davis then filed a timely notice of appeal.
 
 
 4
 Davis raises two objections on appeal. First, she claims that the ALJ's finding that she was not disabled is not supported by substantial evidence. Second, she asserts that the Administration violated her due process rights by verifying a score on one of her psychological reports after the completion of her ALJ hearing.
 
 II.
 
 5
 Judicial review of the findings of the Social Security Administration is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support the ALJ's factual findings. 42 U.S.C. § 405(g) (1991); Brainard v. Secretary of Health & Human Services, 889 F.2d 679, 681 (6th Cir.1989) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). Substantial evidence is "more than a scintilla ... but less than a preponderance and is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brainard, 889 F.2d at 681 (citing Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed.2d 126 (1938)). Thus, if the ALJ's findings are supported by substantial evidence, this court must affirm the ALJ's decision, even if the evidence could support a contrary decision. Casey v. Secretary of Health & Human Services, 987 F.2d 1230, 1233 (6th Cir.1993) (per curiam).
 
 III.
 
 6
 Davis claims that the ALJ's finding that she was not disabled is not supported by substantial evidence. The record, however, suggests otherwise. In order to qualify for the benefits she seeks, Davis bears the burden of proving that she is disabled within the meaning of the Social Security Act. 42 U.S.C. § 402(e)(1)(B) (1991). The Social Security Act requires her to demonstrate that she suffers from a medically determinable physical or mental impairment or combination of impairments that is sufficiently severe. 42 U.S.C. § 423(d)(1)(A), (d)(3) (1991); 42 U.S.C. § 1382c(a)(3)(A) (1992). An impairment or combination of impairments is considered "severe" only if it causes a claimant to be "unable to engage in any substantial gainful activity," that is, only if it significantly limits the claimant's ability to perform basic work activities. 42 U.S.C. § 1382c(a)(3)(A) (1992); 20 C.F.R. §§ 404.1520(c), 416.920(c) (1996).
 
 
 7
 The ALJ concluded that Davis did not satisfy this standard because she did not prove that her impairments were sufficiently severe. Specifically, while the ALJ found that Davis had several impairments--including hearing loss, neck and back pain, hypertension, and a period of depression following the death of a great-niece--he found that none of them (either separately or in combination) significantly interfered with her ability to perform basic work activities. This conclusion is supported by substantial evidence in the record, including the testimony of a medical advisor and a vocational expert, Davis' medical records, and Davis' own testimony regarding her ability to conduct daily activities.
 
 
 8
 On appeal, Davis argues that the ALJ's failure to call a medical advisor who was an ear, nose, and throat specialist or a musculoskelatal specialist precludes this court from finding that the ALJ's decision was supported by substantial evidence. This claim is contradicted by regulations that specifically give the ALJ discretion to decide whether to call a medical expert. 20 C.F.R. §§ 404.1427(f)(2), 416.927(f)(2) (1996). Thus, the ALJ's failure to call a medical expert trained in a particular specialty does not prevent this court from finding that substantial evidence supports the ALJ's decision, and there is no indication the ALJ abused his discretion in this matter.
 
 
 9
 Davis also claims that substantial evidence is lacking because the ALJ should have been estopped from disregarding the psychiatrist's Global Assessment of Functioning ("GAF") test score of thirty-five. In order to evaluate the severity of Davis' depression, the ALJ ordered her to undergo a psychiatric examination. The psychiatrist gave Davis a GAF test and reported her score to the court as thirty-five (a low score suggesting severe impairment). The ALJ disregarded this score on the ground that it was largely based on Davis' own testimony, and because it conflicted with other record evidence (such as Davis' testimony regarding her daily activities). Davis claims that since Social Security Administration regulations required the psychiatrist to examine her based on her case history (i.e., her verbal testimony), some form of estoppel should bar the ALJ from subsequently disregarding findings based on this case history (i.e., the GAF score). Davis cites no legal authority to support this argument. Moreover, it was well within the ALJ's discretion to discount the GAF score of thirty-five, as this was a factual determination reached by the ALJ's weighing the evidence and making credibility determinations. See Myers v. Richardson, 471 F.2d 1265, 1267 (6th Cir.1972) (emphasizing that the fact-finder in a social security benefits case, and not the court, is charged with passing upon the credibility of witnesses and weighing the evidence). This court reviews the ALJ's factual findings only for substantial evidence. 42 U.S.C. § 405(g) (1991); Brainard, 889 F.2d at 681. Because there is substantial evidence in the record as a whole to support the ALJ's finding of no disability, we cannot reverse the ALJ's decision simply because the evidence could have supported a contrary outcome. Casey, 987 F.2d at 1233.
 
 IV.
 
 10
 Davis also argues that the ALJ denied her right to due process by contacting Davis' psychiatrist, post-hearing, to verify her GAF score. During the hearing, the psychiatrist's report showing the low GAF score of thirty-five was admitted into evidence. After a medical expert testified that this low GAF score may have been a typographical error, the ALJ had his assistant call the psychiatrist to verify whether thirty-five was the proper score. The psychiatrist's office reported that the score should have been reported as forty-five to fifty (a higher score suggesting a less serious impairment), and the assistant altered the psychiatrist's report accordingly. Davis claims that this post-hearing verification denies her right to due process because she was not given notice, as required by 20 C.F.R. § 404.946, that the ALJ was considering a new issue. See 20 C.F.R. § 404.946 (1996) (stating that the claimant must be notified if evidence presented during the hearing causes the ALJ to question a determination favorable to the claimant). The district court found that any alteration of the psychiatrist's report was harmless error. According to the district court, even though the assistant altered the psychiatrist's report without notifying Davis, the alteration had no effect on the ALJ's findings because the ALJ considered the unaltered GAF score of thirty-five in determining whether Davis was disabled. The district court noted that neither the alteration nor the inconsistency in the GAF scores was mentioned in the ALJ's ruling.
 
 
 11
 On appeal, Davis claims that the denial of due process was not harmless error. Specifically, Davis asserts that even though the ALJ did not refer to the altered GAF score or the inconsistency in the scores in his decision, the post-hearing verification probably influenced the ALJ's decision to discredit the original GAF score of thirty-five. According to Davis, because the alteration of the score probably did affect the ALJ's decisionmaking process, due process required that she be given an opportunity to raise objections to or question the accuracy of the altered score.
 
 
 12
 We cannot agree. First, an ALJ may appropriately base a decision on evidence produced outside of a hearing. Flatford v. Chater, 93 F.3d 1296, 1303 (6th Cir.1996). Second, the lack of notice to Davis does not alter our conclusion. Even assuming that it was improper for the ALJ to verify and change the psychiatrist's report without notifying Davis, any error was harmless. It is well settled that an arguable defect in administrative proceedings does not, in and of itself, mandate reversal of an agency's action. Brock v. Pierce County, 476 U.S. 253, 260, 106 S.Ct. 1834, 1839, 90 L.Ed.2d 248 (1986) ("We would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action ..."); see also Fed.R.Civ.P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). Here, the ALJ did not rely on the altered score at all, but rather discarded the unaltered score of thirty-five because it conflicted with other evidence and was unsupported by clinical findings. Thus, any error from failure to notify Davis of the post-hearing verification was harmless, as the ALJ disregard the thirty-five GAF score for reasons independent of the post-hearing verification.
 
 
 13
 Davis next argues that the attempt to verify the GAF score after the medical expert suggested that the score might be a typographical error constitutes prejudice by the ALJ. Davis conjectures that the discrediting of the unaltered GAF score of thirty-five after the verification establishes that the ALJ was biased. This argument, which lacks any foundation in the record, supposes that the ALJ's decisionmaking process was somehow prejudicial. We are unpersuaded. This Court has specifically established that "prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." Navistar Int'l Transp. Corp. v. United States Envtl. Protection Agency, 941 F.2d 1339, 1360 (6th Cir.1991). Here, Davis offers nothing but speculation to support her claim. Moreover, Davis' argument fails because this Court will not inquire into the decisionmaking processes of administrative decisionmakers absent a strong showing of bias or interest on the part of such decisionmakers. Here, Davis' bare claim that the post-hearing verification shows bias on the part of the ALJ simply does not overcome the "presumption that policymakers with decisionmaking power exercise their power with honesty and integrity," Navistar, 941 F.2d at 1360, particularly since the verification showed that the initial GAF score should have been higher. See also NLRB v. Ohio New & Rebuilt Parts, Inc., 760 F.2d 1443, 1451 (6th Cir.), cert. denied, 474 U.S. 1020, 106 S.Ct. 569, 88 L.Ed.2d 554 (1985) ("There is a strong and firm presumption that governmental officials ... perform their functions without bias. This presumption can be rebutted, but the burden of establishing a disqualifying interest is upon the person making that contention.") (citations omitted).
 
 
 14
 Finally, Davis argues that even the altered GAF score (45) would allow a finding of disability. While this may be true, it is immaterial, because we review the ALJ's decision only to determine if substantial evidence exists to support his finding of no disability. 42 U.S.C. § 405(g) (1991); Brainard, 889 F.2d at 681. In Davis' case, substantial evidence exists in the record as a whole to support the ALJ's decision that she is not disabled. That the same evidence could support a decision that she is disabled is insufficient ground to overturn the ALJ's decision under the "substantial evidence" standard of review. Casey, 987 F.2d at 1233.
 
 V.
 
 15
 For the foregoing reasons, the judgment of the district court is hereby affirmed.